**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

**TAHA TARAR,**

**Plaintiff,**

**-against-**

**U.S. DEPARTMENT OF EDUCATION;**
**EQUIFAX INFORMATION SERVICES, LLC;**
**EXPERIAN INFORMATION SOLUTIONS, INC.;**
**and TRANS UNION, LLC,**

**Defendants.**

-----------------------------------------------------------------x

**1:26-cv-08180**

**COMPLAINT**

Plaintiff, TAHA TARAR ("Plaintiff"), by and through his undersigned counsel, Mallon Consumer Law Group, PLLC, brings this action against Defendants U.S. DEPARTMENT OF EDUCATION ("Department of Education"), EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), and TRANS UNION, LLC ("Trans Union"), and alleges the following, upon information and belief:

## PRELIMINARY STATEMENT

1. Plaintiff Taha Tarar first became aware of an alleged Federal Perkins Loan in or around May 2025 when Defendant U.S. Department of Education reported the account as a newly defaulted tradeline to each of the major consumer reporting agencies. Despite the loan allegedly originating between 2006 and 2008, the loan was not serviced or communicated to Plaintiff for nearly two decades before it appeared on his consumer reports and, apart from a brief tradeline reported by a prior servicer in 2022 and thereafter removed, was never reported to the consumer reporting agencies. The account was then reported in a manner that falsely suggested a recent delinquency.

2. Plaintiff brings this action against Defendant U.S. Department of Education for violating the FCRA, 15 U.S.C. § 1681s-2(b), by failing to reasonably investigate Plaintiff's disputes regarding the inaccurate and misleading reporting. Defendant Department of Education wrongfully verified the tradeline as accurate despite substantial evidence demonstrating the absence of continuous servicing, reporting, and a verifiable date of first delinquency.

3. Plaintiff brings this action against Defendants Equifax, Experian, and Trans Union, the three major national consumer reporting agencies and collectively referred to herein as the "consumer reporting agency Defendants," for violating the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and the New York Fair Credit Reporting Act, N.Y. GBL § 380 et seq., by failing to conduct reasonable investigations after Plaintiff disputed the subject tradeline and instead blindly parroted the results provided by Defendant Department of Education.

4. Plaintiff further alleges that as a direct and proximate result of Defendants' unlawful actions, conduct, and omissions, the erroneous derogatory information wrongfully listed on Plaintiff's consumer reports caused him to suffer actual damages including, but not limited to, damage to reputation, adverse impact on credit rating, being denied credit, including the denial of a mortgage loan application, and/or being offered credit on inferior terms, in addition to emotional distress, expenditure of time and resources, annoyance, aggravation, and frustration.

5. Plaintiff brings this action for actual and statutory damages, for punitive damages as against the consumer reporting agency Defendants, and for statutory attorney's fees and costs, pursuant to the FCRA, 15 U.S.C. § 1681 et seq., and the NY FCRA, N.Y. GBL § 380 et seq.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p.

7. The United States has waived its sovereign immunity as to the FCRA claim asserted herein against Defendant Department of Education. The FCRA imposes the duties set forth in 15 U.S.C. § 1681s-2(b) upon any "person," defines "person" to include "any … government or governmental subdivision or agency," id. § 1681a(b), and authorizes an action for damages against "any person" who willfully or negligently fails to comply with the Act, id. §§ 1681n, 1681o. See *U.S. Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024).

8. This action is timely. It is brought within two years after Plaintiff discovered the violations alleged herein and within five years after the dates on which those violations occurred. See 15 U.S.C. § 1681p.

9. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

10. Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b) and (e)(1), because Plaintiff resides in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

11. Plaintiff, a natural person, is a resident of the State of New York, County of New York, and resides within this District, and qualifies as an individual "consumer" within the meaning of both the FCRA and the NY FCRA. See 15 U.S.C. § 1681a(c); N.Y. GBL § 380-a(b).

12. Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax") is a Georgia limited liability company, duly authorized and qualified to do business in the State of New York. Equifax qualifies as a "consumer reporting agency" within the meaning of both the FCRA and the NY

FCRA. See 15 U.S.C. § 1681a(f); N.Y. GBL § 380-a(e).

13. Defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") is an Ohio corporation, duly authorized and qualified to do business in the State of New York. Experian qualifies as a "consumer reporting agency" within the meaning of both the FCRA and the NY FCRA. See 15 U.S.C. § 1681a(f); N.Y. GBL § 380-a(e).

14. Defendant TRANS UNION, LLC ("Trans Union") is a Delaware limited liability company, duly authorized and qualified to do business in the State of New York. Trans Union qualifies as a "consumer reporting agency" within the meaning of both the FCRA and the NY FCRA. See 15 U.S.C. § 1681a(f); N.Y. GBL § 380-a(e).

15. Defendant U.S. DEPARTMENT OF EDUCATION ("Department of Education") is a federal agency that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies regarding consumer accounts. The Department of Education is a "person" within the meaning of 15 U.S.C. § 1681a(b) and a furnisher of information subject to the duties imposed by 15 U.S.C. § 1681s-2(b).

## FACTUAL BACKGROUND

16. Plaintiff attended Northern Virginia Community College ("NVCC") from approximately 2006 through 2008, during which time he obtained one or more Federal Perkins Loans.

17. Upon leaving NVCC in or about 2008, Plaintiff reasonably believed that all of his student loan obligations associated with NVCC had been satisfied, including loans serviced by USA Funds which were paid in full in or around 2014.

18. From approximately 2006 through 2022, the subject loan was not actively serviced and was not reported to consumer reporting agencies. The loan also did not appear in Plaintiff's credit

history or federal student loan databases.

19. Plaintiff maintained stable and continuous contact information during this time, including residing at the same address from approximately 2010 through 2019 and maintaining the same active email address and phone number.

20. Despite this, Plaintiff did not receive any billing statements, delinquency notices, default notices, or other communications regarding the subject loan for nearly two decades.

21. In or around June 2022, a prior servicer, ECSI, began handling the subject loan and briefly reported a tradeline associated with the account.

22. The ECSI tradeline was subsequently removed prior to the account's transfer to Defendant U.S. Department of Education – Default Resolution Group ("DRG") in or around January 2025.

23. On or about January 14, 2025, the subject loan was entered into the Department of Education's system, nearly nineteen years after its alleged origination.

24. On or about May 3, 2025, Plaintiff first became aware of the subject loan when he received an Experian credit alert reflecting a defaulted tradeline reported by Defendant U.S. Department of Education.

25. Shortly thereafter, Plaintiff contacted DRG and was informed that a "welcome packet" had been mailed in or around January 2025 to an outdated address that Plaintiff had not used since 2019.

26. Defendant Department of Education's own reporting confirms that it had not located Plaintiff when it began reporting the account. The Equifax disclosures reflect that the account carried the notation "Customer Unable to Locate Consumer" for April 2025, and the notation "Customer Has Now Located Consumer" beginning in June 2025. Experian's May 29, 2025 dispute results likewise reported the account status as "Creditor recently located individual. $6,540 past due

as of Apr 2025."

27. No attempt was made to contact Plaintiff via email or telephone, despite such contact information being available and actively used by other loan servicers.

28. Despite the loan allegedly originating between 2006 and 2008, Defendant Department of Education reported the account as newly opened in or around January 2025, with a current default status and significant past-due balance.

29. Specifically, in the dispute results Experian issued to Plaintiff dated December 2, 2025 (Report No. 3743-5487-10), the subject tradeline is reported as follows: Account Name, "U.S. DEPARTMENT OF EDUCATION"; Account Number, 6479XXXX; Original Creditor, "PERKINS LOANS"; Account Type, "Education"; Responsibility, "Individual"; Date Opened, 01/14/2025; Status, "Collection account. $6,623 past due as of Nov 2025"; Status Updated, 01/2025; Original Balance, $6,471; Balance, $6,623, updated 11/15/2025; Terms, "1 Month"; and On Record Until, "Sep 2030."

30. Experian reported the subject account in the same manner earlier in the dispute cycle. In the dispute results Experian issued to Plaintiff dated May 29, 2025 (Report No. 2090-8509-32), the account was reported with a Date Opened of 01/14/2025, an Original Balance of $6,471, a Balance of $6,540 updated 04/15/2025, Terms of "1 Month," a Status of "Creditor recently located individual. $6,540 past due as of Apr 2025," and a scheduled purge date of September 2030.

31. The Experian disclosure reports no date of first delinquency, no date of last payment, and no date of last activity for the subject account. The only payment history reported is a single row for calendar year 2025, reflecting the account in "Collection" status in each month from January 2025 through November 2025, with no data reported for May 2025. No payment history, delinquency

history, or account activity of any kind is reported for the years 2006 through 2024.

32. Defendant Department of Education reported the subject account to Equifax with materially different data. In the dispute results Equifax issued to Plaintiff dated June 25, 2025 (Confirmation No. 5171558967) and again on November 14, 2025 (Confirmation No. 5316565802), the account is reported under account number ending *7159, furnished by "US DEPARTMENT OF EDUCATION, PO Box 5609, Greenville, TX 75403-5609," with a Date Opened of 01/01/2025, a Date of 1st Delinquency of 12/06/2023, High Credit of $6,471, Portfolio Status "PERKINS LOANS," Type of Loan "Education Loan," and Type of Account "Open."

33. The date of first delinquency Defendant Department of Education reported to Equifax — December 6, 2023 — is false. The subject loan originated between 2006 and 2008 and was never repaid. Plaintiff made no payment on the subject loan in 2023, and nothing occurred on or about December 6, 2023 that could constitute a first delinquency on the account. The reported date post-dates the account's actual first delinquency by approximately fifteen years.

34. Defendant Department of Education therefore furnished materially inconsistent information about the same account to different consumer reporting agencies: a date opened of January 1, 2025 to Equifax and January 14, 2025 to Experian, and a date of first delinquency of December 6, 2023 to Equifax and no date of first delinquency at all to Experian. No single set of facts can support both versions.

35. Equifax further reports the subject account with a Type of Account of "Open," notwithstanding that the account is a defaulted obligation originating no later than 2008 that has been carried in collection status throughout the period reported.

36. Upon information and belief, Defendant Department of Education furnished the same or

substantially the same information concerning the subject account to Defendant Trans Union, including a date opened in January 2025 and no date of first delinquency consistent with the account's actual history.

37. Had the subject account been reported accurately, it would have reflected an origination date between 2006 and 2008 and a date of first delinquency no later than in or about 2009, and it would not have reflected an account opened, or a default first occurring, in 2025.

38. Consistent with the re-aged data it received, Experian has calculated a scheduled purge date for the subject account of September 2030. Experian therefore intends to continue reporting this derogatory account for more than twenty-two years after the loan originated. A purge date of September 2030 is inconsistent with any date of first delinquency earlier than 2023, and is irreconcilable with the undisputed fact that the subject loan originated between 2006 and 2008 and was never repaid. That purge date is, however, precisely consistent with the December 6, 2023 date of first delinquency Defendant Department of Education reported to Equifax.

39. The January 2025 transfer of the subject loan to DRG reflects the administrative assignment of a long-defaulted account, not the origination of a new obligation or the occurrence of a new default. Institutions holding Federal Perkins Loans that had been in default for two or more years were required to assign those loans to Defendant Department of Education, and the subject loan was assigned pursuant to that requirement.

40. This reporting created the false and misleading impression that the account had recently become delinquent and thereby effectively re-aged the loan, without any verifiable date of first delinquency or continuous servicing history.

41. In or about May 2025, Plaintiff submitted disputes to each of the consumer reporting agency

Defendants, namely, Equifax, Experian, and Trans Union, challenging the accuracy and completeness of the reporting. Trans Union confirmed receipt of Plaintiff's dispute on May 5, 2025. Experian's own records reflect that the subject tradeline "was updated from our processing of your dispute in May 2025," and Experian issued dispute results on May 29, 2025. Equifax issued dispute results on June 25, 2025.

42. Plaintiff's disputes were neither general nor conclusory. Each dispute identified the specific information Plaintiff contended was inaccurate or misleading — including the reported date the account was opened, the absence of any verifiable date of first delinquency, and the characterization of the account as a recent default — and enclosed supporting documentation, including the Department of Education's September 2025 letter and Plaintiff's November 2025 rebuttal letter to the Department's Default Resolution Group.

43. On June 25, 2025, Equifax issued dispute results stating that "[t]he information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated," and that "WE VERIFIED THAT THIS ITEM BELONGS TO YOU." Equifax did not delete or correct the account.

44. Plaintiff also submitted a detailed written dispute directly to DRG in or around August 2025, outlining the lack of servicing, absence of prior reporting, and inaccuracies in the tradeline.

45. In or around September 2025, DRG responded but failed to address the substantive issues raised by Plaintiff, including the nearly two-decade gap in servicing and reporting.

46. Plaintiff submitted a follow-up response to DRG in or around October 2025, reiterating the inaccuracies and requesting correction or deletion of the tradeline.

47. In November 2025, Plaintiff submitted a second round of disputes to the consumer reporting

agency Defendants, again providing detailed information and supporting documentation. Plaintiff's written dispute to Trans Union is dated November 12, 2025.

48. Plaintiff's November 12, 2025 written dispute to Trans Union identified the account by number (1009921893), set out the full history of the loan, stated that "there was no continuous servicing, verified borrower notice, or valid date of first delinquency," expressly invoked 15 U.S.C. § 1681s-2(b), requested deletion of the tradeline or at minimum removal of all derogatory and delinquency information, and enclosed two exhibits: the Department of Education's September 2025 letter and Plaintiff's November 2025 rebuttal letter.

49. That dispute further authorized Trans Union to review its own archived records to confirm that no Department of Education, ECSI, or Northern Virginia Community College tradeline appeared on Plaintiff's consumer report before 2022, and that the ECSI tradeline had subsequently been deleted. Upon information and belief, Trans Union did not review those records.

50. On November 18, 2025, Trans Union notified Plaintiff by electronic mail that its investigation was complete. Trans Union did not delete or correct the subject tradeline.

51. On November 14, 2025, Equifax issued a second set of dispute results, stating that "THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE CURRENT STATUS IS BEING REPORTED CORRECTLY" and that "THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE PRIOR PAYING HISTORY IS BEING REPORTED CORRECTLY." Equifax again did not delete or correct the account.

52. Both sets of Equifax results state that, in the course of each investigation, the following fields were modified: "ADDITIONAL INFORMATION," "ACTUAL PAYMENT," "DATE OPEN," "CHARGE OFF AMOUNT," and "DATE OF MAJOR DELINQUENCY 1ST

REPORTED." Defendant Department of Education thus represented that it had revisited and modified the very date fields Plaintiff disputed, while simultaneously certifying that the account was being reported correctly. Notwithstanding those purported modifications, the date opened remained 01/01/2025 and the date of first delinquency remained 12/06/2023 in both the June 2025 and the November 2025 results.

53. On December 2, 2025, Experian issued dispute results to Plaintiff stating that "[t]he item you disputed has been updated," and that the item "was updated from our processing of your dispute in Dec 2025." Experian did not delete or correct the tradeline.

54. The reinvestigation changed nothing of substance. Before and after the reinvestigation, Experian reported the same date opened (01/14/2025), the same status updated date (01/2025), the same original balance ($6,471), the same balance ($6,623), no date of first delinquency, and the same scheduled purge date of September 2030. The only differences between the pre-dispute and post-dispute records were the advancement of the "past due as of" date from October 2025 to November 2025, the corresponding advancement of the balance-updated date from 10/25/2025 to 11/15/2025, the addition of one further month of "Collection" payment history, and the addition of the notation "ITEM IN DISPUTE BY CONSUMER." In other words, the sole effect of Experian's reinvestigation was to age the account forward by one month.

55. Upon information and belief, each of the consumer reporting agency Defendants forwarded Plaintiff's disputes to Defendant Department of Education for investigation.

56. Upon information and belief, in forwarding Plaintiff's disputes, the consumer reporting agency Defendants failed to provide Defendant Department of Education with all relevant information regarding those disputes that Plaintiff had submitted to them, in violation of 15 U.S.C.

§ 1681i(a)(2).

57. Despite receiving Plaintiff's disputes and supporting documentation, Defendant Department of Education failed to conduct a reasonable investigation and instead verified the inaccurate reporting as accurate.

58. Each of the consumer reporting agency Defendants thereafter continued to report the subject tradeline as verified, without conducting a reasonable and independent reinvestigation, and instead merely parroted the results provided by Defendant Department of Education.

59. Upon information and belief, the consumer reporting agency Defendants' reinvestigations consisted of nothing more than transmitting a coded Automated Consumer Dispute Verification ("ACDV") form to Defendant Department of Education and adopting whatever response it returned. The consumer reporting agency Defendants did not review the documentation Plaintiff submitted, did not obtain or examine any account-level records, and did not consider whether the information being reported was misleading in the form in which it was presented.

60. A reasonable investigation by any Defendant would have revealed that the subject loan originated between 2006 and 2008; that it had been in default for years before January 2025; that no servicing or payment history supporting the reported dates existed; and that the account was therefore being reported in a manner that falsely portrayed a decades-old obligation as a recently opened account in recent default.

61. The inaccuracy of the subject tradeline was apparent from the face of the information Plaintiff submitted and from Defendants' own records. Defendants' continued verification and republication of that information, after repeated and documented disputes, was knowing or in reckless disregard of Defendants' obligations under the FCRA.

62. On or about December 31, 2025, Plaintiff submitted a complaint to the Consumer Financial Protection Bureau ("CFPB") detailing the inaccurate reporting and lack of verification.

63. In or around January 13, 2026, Defendant Department of Education responded to the CFPB complaint but failed to provide documentation sufficient to verify the accuracy or completeness of the tradeline, including any complete servicing history or verifiable date of first delinquency.

64. As of the date of the filing of this Complaint, the subject tradeline continues to be reported inaccurately, falsely characterizing a nearly twenty-year-old loan as a recent default and severely damaging Plaintiff's credit profile.

65. Each of the consumer reporting agency Defendants disclosed consumer reports concerning Plaintiff that contained the inaccurate and misleading subject tradeline to one or more third parties, including Insula Capital Group, to which Plaintiff had applied for a mortgage loan secured by the property located at 152 High Street, Montclair Township, New Jersey.

66. On November 25, 2025, Insula Capital Group notified Plaintiff in writing that it was "unable to proceed with your loan application due to the negative credit impact of the recent student loan tradeline," and identified "the reported student loan tradeline from the U.S. Department of Education – Default Resolution Group." The lender further stated: "Without this reporting item in collections or past due, your application would have otherwise met our credit score requirements."

67. Plaintiff has suffered harm as a result of Defendants' conduct here. The inaccurate derogatory information wrongfully listed on Plaintiff's consumer reports damaged his credit rating and led to him being denied credit, including the denial of his November 2025 mortgage loan application, which the lender attributed to the subject tradeline and which the lender stated would otherwise have met its credit score requirements, and/or being offered credit on inferior terms.

68. Plaintiff has further suffered significant emotional distress and damage to his reputation, adverse impact on credit rating, expenditure of time and resources, annoyance, aggravation, and frustration.

**FIRST CAUSE OF ACTION**
VIOLATION OF THE FCRA, 15 U.S.C. §§ 1681e(b), 1681i, AND 1681c
Against Defendants Equifax, Experian, and Trans Union

69. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

70. Defendants Equifax, Experian, and Trans Union each prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced numerous consumer reports regarding Plaintiff, as that term is defined in the FCRA. See 15 U.S.C. § 1681a(d).

71. Such reports erroneously included inaccurate and misleading information associated with a tradeline reported by Defendant U.S. Department of Education concerning the subject Federal Perkins Loan account.

72. Defendants Equifax, Experian, and Trans Union willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations of Plaintiff's multiple disputes of the inaccurate and misleading information associated with the subject tradeline.

73. Defendants Equifax, Experian, and Trans Union willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff regarding his disputes.

74. Defendants Equifax, Experian, and Trans Union willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i(a)(2) by failing to provide Defendant Department of Education with all relevant information regarding Plaintiff's disputes.

75. Defendants Equifax, Experian, and Trans Union willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i(a)(5) by failing to delete or modify the disputed inaccurate and misleading information associated with the subject tradeline from Plaintiff's file after failing to verify the completeness and accuracy of that information.

76. Defendants Equifax, Experian, and Trans Union willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to establish and follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff contained in the consumer reports they prepared and published.

77. In the alternative, and to the extent the subject account carried a date of first delinquency more than seven years before the reporting complained of, Defendants Equifax, Experian, and Trans Union willfully, or in the alternative negligently, violated 15 U.S.C. § 1681c(a)(4) by continuing to include the account in consumer reports concerning Plaintiff. The date of first delinquency of December 6, 2023 reported to Equifax, and Experian's scheduled purge date of September 2030, are each irreconcilable with an account that first became delinquent no later than in or about 2009, and reflect the use of a date of first delinquency that does not exist. The subject loan is a Federal Perkins Loan made under Part E of the Higher Education Act and is not a loan "guaranteed under" Part B, to which the reporting-period override of 20 U.S.C. § 1080a(f) applies.

78. Accordingly, Defendants Equifax, Experian, and Trans Union are liable to Plaintiff for actual and statutory damages, and for punitive damages, in an amount to be determined by the trier of fact, as well as for Plaintiff's litigation costs and reasonable attorney's fees incurred as a result of their violations of the FCRA, pursuant to 15 U.S.C. §§ 1681n and 1681o.

**SECOND CAUSE OF ACTION**

VIOLATION OF THE FCRA, 15 U.S.C. § 1681s-2(b)
Against Defendant U.S. Department of Education

79. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

80. Defendant U.S. Department of Education is a "person" within the meaning of 15 U.S.C. § 1681a(b) and regularly and in the ordinary course of business furnishes information concerning consumer accounts to one or more consumer reporting agencies. It furnished the information concerning the subject account described above, and thereby became subject to the duties imposed by 15 U.S.C. § 1681s-2(b) upon receiving notice of Plaintiff's disputes from the consumer reporting agency Defendants.

81. After receiving notification of Plaintiff's disputes from Defendants Equifax, Experian, and Trans Union, Defendant U.S. Department of Education willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations of Plaintiff's multiple disputes of the inaccurate and misleading information associated with the subject account, and by failing to review all relevant information regarding Plaintiff's disputes.

82. Defendant U.S. Department of Education willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information purportedly provided by the consumer reporting agency Defendants in conducting its investigations of the subject account.

83. Defendant U.S. Department of Education willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b)(1)(C), (D), and (E) by failing to report the results of its investigations to the consumer reporting agency Defendants accurately, by failing to report to all consumer reporting agencies to which it had furnished the information that the information was incomplete or

inaccurate, and by failing to modify, delete, or permanently block the reporting of information it could not verify as complete and accurate.

84. Defendant U.S. Department of Education further failed to correct inaccurate and incomplete information and continued to verify the subject tradeline as accurate despite substantial evidence demonstrating that the account lacked continuous servicing, a verifiable date of first delinquency, and was reported in a misleading manner that falsely suggested a recent delinquency.

85. Accordingly, Defendant U.S. Department of Education is liable to Plaintiff for actual and statutory damages in an amount to be determined by the trier of fact, as well as for Plaintiff's litigation costs and reasonable attorney's fees incurred as a result of its violations of the FCRA, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## THIRD CAUSE OF ACTION

VIOLATION OF THE NY FCRA

Against Defendants Equifax, Experian, and Trans Union Only

86. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

87. Defendants Equifax, Experian, and Trans Union each prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced numerous consumer reports regarding Plaintiff, as that term is defined in the NY FCRA. See N.Y. GBL § 380-a(c)(1).

88. Such reports erroneously included inaccurate and misleading information associated with a tradeline reported by Defendant U.S. Department of Education concerning the subject account. Defendants knew, or should have known, that the reports contained such inaccurate information, in violation of N.Y. GBL § 380-j(a)(3).

89. Defendants Experian, Equifax, and Trans Union willfully, or in the alternative negligently,

violated N.Y. GBL § 380-f by failing to conduct reasonable reinvestigations of Plaintiff's multiple disputes of the erroneous and misleading information associated with the subject tradeline.

90. Defendants Experian, Equifax, and Trans Union willfully, or in the alternative negligently, violated N.Y. GBL §§ 380-f(b) and (d) by failing to delete or modify the disputed information regarding the subject tradeline from Plaintiff's file after failing to verify the completeness and accuracy of that information.

91. Defendants each published credit reports regarding Plaintiff on multiple occasions containing the erroneous and derogatory information associated with the subject tradeline, causing Plaintiff to suffer harm as more fully described above.

92. Accordingly, Defendants are liable to Plaintiff for actual and punitive damages in an amount to be determined by the trier of fact, as well as for Plaintiff's litigation costs and reasonable attorney's fees, pursuant to N.Y. GBL §§ 380-l and 380-m.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:**

- **a. Actual damages against all Defendants pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1), and, as against the consumer reporting agency Defendants, N.Y. GBL §§ 380-l and 380-m;**
- **b. Statutory damages against all Defendants pursuant to 15 U.S.C. § 1681n(a)(1)(A);**
- **c. Punitive damages against the consumer reporting agency Defendants pursuant to 15 U.S.C. § 1681n(a)(2) and N.Y. GBL § 380-l;**
- **d. Reasonable attorney's fees and costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2), and N.Y. GBL §§ 380-l and 380-m;**
- **e. Pre-judgment and post-judgment interest as permitted by law; and**
- **f. Such other and further relief as this Court deems just and proper.**

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL CAUSES OF ACTION ASSERTED**

**HEREIN.**

Dated: September 18, 2026

Respectfully submitted,

Kevin C. Mallon
Mallon Consumer Law Group, PLLC
550 Kinderkamack Road, Suite 117
Oradell, NJ 07649
(646) 713-1008
kmallon@consumerprotectionfirm.com
*Attorneys for the Plaintiff*